UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| -against- | **MEMORANDUM AND ORDER**<br>Case No. 1:14-CR-476 (FB) |
| KELVIN LEACH and ROHN KNOWLES, | |
| Defendants. | |

*Appearances:*
*For the Government:*          *For the Defendants:*
MATTHEW R. GALEOTTI          ADAM CALEB FORD
Assistant United States Attorney   BRYAN W. MCCRACKEN
Eastern District of New York      NOAH D. GENEL
271 Cadman Plaza East           Ford O'Brien Landy LLP
Brooklyn, New York 11201        275 Madison Avenue, Fl. 24
                                New York, New York 10016

**BLOCK, Senior District Judge:**

Defendants Kelvin Leach and Rohn Knowles are charged with conspiracy to

commit securities fraud and conspiracy to commit money laundering. They jointly

move, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v), to dismiss

the indictment for failure to state an offense. For the following reasons, the motion

is denied.

I

**A.  Factual Background**

The indictment alleges the following facts:

Titan International Securities Inc. ("Titan") was an offshore broker-dealer and investment-management company with its principal place of business in Belize City, Belize. Leach was Titan's President, and Knowles its Head Securities Trader; both worked out of Titan's Belize City office.

In January of 2013, an undercover federal agent in the Eastern District of New York called Leach and Defendant Andrew Godfrey, who worked for another business, IPC Corporate Services Inc. ("IPC"). The agent stated that he was a U.S. citizen who was interested in opening an offshore brokerage account with Titan. He explained that he was a stock promoter who wanted to conceal his ownership of certain stocks and money transfers to avoid scrutiny from the Securities and Exchange Commission ("SEC") and the Internal Revenue Service ("IRS").

Leach told the agent that Titan did not open individual brokerage accounts for U.S. citizens, but that it could open accounts for international business corporations ("IBCs"). Godfrey explained that IPC could structure IBCs to conceal ownership of the accounts. The undercover agent then paid for the creation of the IBCs and brokerage accounts. Leach confirmed that the accounts with Titan had been established in the name of the IBCs, thereby concealing the agent's control of the accounts.

The agent later met with Knowles and Godfrey in Belize. When the agent explained that he wanted to engage in market manipulation through illusory trades

between two of the Titan accounts, Knowles stated that he could arrange the trades.

## B. Procedural History

Leach and Knowles were indicted on September 8, 2014. Because both men are citizens of the Bahamas residing in Belize, the United States requested their arrest and extradition. The government of Belize executed the arrest, but Leach and Knowles successfully challenged their extradition on the grounds that the indictment was based on evidence obtained in violation of their rights under Belizean law. Although they have not been extradited to the United Sates, they have been unable to leave Belize for fear of arrest in a different country.

Thus, Leach and Knowles have yet to answer the charges against them. Instead, they seek to dismiss the indictment.

## II

## A. Fugitive Disentitlement

Before turning to the merits of the motion, the Court must briefly address the government's invocation of the fugitive disentitlement doctrine, under which "a court may decline to entertain the claims of a defendant who is a fugitive from justice." *United States v. Bescond*, 24 F.4th 759, 764 (2d Cir. 2021). Leach and Knowles are not "traditional fugitives" because they did not "flee[] from the jurisdiction of the court where a crime was committed or depart[] from [their] usual place of abode and conceal[ themselves] within the district." *Id.* at 771

3

(cleaned up).  They are not "constructive-flight fugitives" because, as residents of

Belize, they did not just happen to be there and then "refuse[] to return to the

United States in order to avoid prosecution."  *Id.* at 772 (cleaned up).  Even if their

status were a close call, the Court would still decline to rely on the doctrine

because, as the Second Circuit has noted, incautiously labeling a foreign defendant

a fugitive "is in tension with principles that underlie the presumption against

extraterritorial[ application of United States law]."  *Id.*; *see also id.* at 773 (noting

that use of the doctrine is discretionary).  Since extraterritoriality is at the heart of

defendants' motion to dismiss, the Court will address it on the merits.

## B.  Failure to State an Offense

Federal Rule of Criminal Procedure 7(c) requires that an indictment include

"a plain, concise, and definite written statement of the essential facts constituting

the offense charged."  The Second Circuit has explained that "[a]n indictment is

sufficient as long as it (1) contains the elements of the offense charged and fairly

informs a defendant of the charge against which he must defend, and (2) enables

the defendant to plead an acquittal or conviction in bar of future prosecutions for

the same offense." *United States v. Dawkins*, 999 F.3d 767, 779 (2d Cir. 2021). "To

satisfy these requirements, 'an indictment need do little more than . . . track the

language of the statute charged and state the time and place (in approximate terms)

of the alleged crime.'" *Id.* (quoting *United States v. Alfonso*, 143 F.3d 772, 776 (2d

Cir. 1998)).

There is no question but that the indictment against Leach and Knowles does precisely that. Count One (Conspiracy to Commit Securities Fraud) tracks the language of 15 U.S.C. § 78j(b), otherwise known as § 10(b) of the Securities Exchange Act of 1934; since that statute does not specifically include conspiracies, the indictment also alleges overt acts in furtherance of the conspiracy, as required by the general conspiracy statute, 18 U.S.C. § 371. Count Three (Money Laundering Conspiracy) tracks the language of 18 U.S.C. § 1956, which criminalizes conspiracies without overt acts. Both counts allege that the criminal conduct took place "[i]n or about and between January 2009 and September 2014 [and] within the Eastern District of New York and elsewhere." Indictment ¶¶ 48, 54.

Leach and Knowles's sole complaint is that both charges require extraterritorial application of United State law. As noted, there is a presumption against such application. *See RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 335 (2016) ("Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application."). With respect to securities fraud, the Supreme Court has held that § 10(b) does not apply extraterritorially. *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 265 (2010). As for money laundering, the statute itself limits its application to cases involving more the

$10,000 and conduct that either "is by a United States citizen" or "occurs in part in the United States."  18 U.S.C. § 1956(f).

All of which is beside the point because the United States has disavowed any extraterritorial application of either statute.  Instead, it argues that "Count One inherently alleges a domestic violation, since that is the only kind of violation that exists [under *Morrison*]," *see* Gov't Mem. of Law at 12, and that "Count Three alleges a domestic violation of § 1956(h) over which the Court plainly has jurisdiction," *id.* at 16.

In addition to foreclosing extraterritorial application of § 10(b), *Morrison* defines its domestic scope: "Section 10(b) reaches the use of a manipulative or deceptive device or contrivance only in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States."  561 U.S. at 273.  Though a civil case, *Morrison*'s holding applies "regardless of whether liability is sought criminally or civilly."  *United States v. Vilar,* 729 F.3d 62, 67 (2d Cir. 2013).  Thus, "a defendant may be convicted of securities fraud under Section 10(b) and Rule 10b-5 only if he has engaged in fraud in connection with (1) a security listed on a U.S. exchange, or (2) a security purchased or sold in the United States."  *Id.*

Leach and Knowles argue that the indictment against them does not satisfy *Morrison*.  But that argument is premature.

6

In assessing a motion to dismiss an indictment, "the facts alleged by the government must be taken as true." *United States v. Velastegui*, 199 F.3d 590, 592 n.2 (2d Cir. 1999).  Moreover, courts at this stage "do not evaluate the adequacy of the facts to satisfy the elements of the charged offense." *Dawkins*, 999 F.3d at 780. "That is something we do after trial." *Id*.  In other words, "summary judgment does not exist in federal criminal procedure." *United States v. Aiyer*, 33 F.4th 97, 117 (2d Cir. 2022).

As a result, there is—as far as the Court is aware—not a single case in which a securities-fraud indictment has been dismissed based on *Morrison*.  On the contrary, the only reported case addressing the issue concluded that it was premature:  "The Court will be in a better position to decide whether § 10(b) reaches the transactions at issue once the Government puts on its case-in-chief.  At that time, the Defendant can reassert his motion." *United States v. Coffman*, 771 F. Supp. 2d 735, 737 (E.D. Ky. 2011).  The Southern District has reached the same conclusion, albeit with respect to a different statute, reasoning that "[t]he Government is entitled to put on its evidence, which may include facts beyond those alleged in the Indictment, and Defendant is entitled to challenge that evidence as insufficient, both on a Rule 29 motion and before the jury." *United States v. Phillips*, 2023 WL 5671227, at *8 (S.D.N.Y. Sept. 2, 2023); *see also United States v. Bankman-Fried*, 680 F. Supp. 3d 289 (S.D.N.Y. 2023)

7

("Extraterritoriality typically is assessed after a full presentation of the evidence at trial.").

The Court agrees that determining whether the facts of this case bring it within the territorial scope of § 10(b) must await the development of those facts at trial. At this stage, it is sufficient under *Dawkins* that the indictment alleges that Leach and Knowles conspired to violate the statute "within the Eastern District of New York and elsewhere." Indictment ¶ 48. Whether the government can prove that allegation remains to be seen.[1]

There is no *Morrison* analogue for money laundering. The government argues that the statute delimits its own territorial application because it covers, among other things, the "transport, transmi[ssion], or transfer [of] a monetary instrument or funds from a place in the United States to or through a place outside

_____

[1]The Court is aware that a domestic securities transaction is "necessary but not necessarily sufficient to make § 10(b) applicable," *Parkcentral Glob. HUB Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 216 (2d Cir. 2014), and that the defendants' conduct "must not be 'so predominately foreign as to be impermissibly extraterritorial.'" *Prime Int'l Trading, Ltd. v. BP P.L.C.*, 937 F.3d 94, 106 (2d Cir. 2019) (quoting *Parkcentral*, 763 F.3d at 216). The Court is also aware that the Dodd-Frank Wall Street Reform and Consumer Protection Act arguably allows extraterritorial application of the securities law to conduct occurring after its enactment on July 21, 2010. *See Sec. & Exch. Comm'n v. Scoville*, 913 F.3d 1204, 1218 (10th Cir. 2019) ("[W]e conclude that Congress has affirmatively and unmistakably indicated that the antifraud provisions of the federal securities acts apply extraterritorially when the statutory conduct-and-effects test is met."). Inasmuch as those issues concern the territorial application of § 10(b), they, too, can be addressed only after the government has put on its case. *Accord Coffman*, 771 F. Supp. 2d at 737 (deferring consideration of similar issues).

the United States or to a place in the United States from or through a place outside the United States." 18 U.S.C. § 1956(a)(2). In addition to tracking this statutory language, the indictment alleges specific wire transfers to and from the United States. *See* Indictment ¶¶ 20, 35.

As with securities fraud, whether the facts of this case make out a domestic violation of the money-laundering statute is a question for a later date. For now, it is sufficient that the indictment alleges that a violation occurred "within the Eastern District of New York and elsewhere." Indictment ¶ 54.

## C. Due Process

Leach and Knowles argue that application of United States law to their conduct would violate their rights under the Due Process Clause of the Fifth Amendment. As they would receive the epitome of due process—a criminal trial—if they were to appear, their argument involves *substantive* due process.

In that regard, application of the criminal laws of the United States to "non-citizens acting entirely abroad" require, irrespective of congressional intent, "a sufficient nexus between the defendant[s] and the United States, so that such application would not be arbitrary or fundamentally unfair." *United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011). But this is yet another premature issue. Determining whether Leach and Knowles's conduct had a nexus sufficient to satisfy due process requires the Court to know exactly what that conduct was and,

9

therefore, to allow the government an opportunity to present its case.

Moreover, due process hinges on a deprivation of "life, liberty, or property." Any deprivation in this case will flow from a conviction.  The Court obviously cannot say whether such a conviction would comport with due process until after a trial.  *Cf. Vilar,* 729 F.3d at 67 ("[A] defendant may be *convicted* of securities fraud under . . . only if he has engaged in fraud in connection with (1) a security listed on a U.S. exchange, or (2) a security purchased or sold in the United States." (emphasis added)).

### III

The indictment adequately alleges a territorial basis for the application of § 10(b) and 18 U.S.C. § 1956 to Leach and Knowles.  Until the government has presented the facts supporting those allegations at trial, it is premature to address whether such application is statutorily and constitutionally permissible. Accordingly, the motion to dismiss the indictment is denied without prejudice to raising the same issues at the appropriate time.

**SO ORDERED.**

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
January 7, 2026